Requestor: Hon. William G. McMahon, Chairman State Commission on Correction 60 South Pearl Street Albany, New York 12207-1596
Written by: Robert Abrams, Attorney General
You have requested a formal opinion as to whether article 5-G of the General Municipal Law, providing for municipal cooperation agreements, authorizes the establishment of a regional jail.
You have described a regional jail as a jail operated jointly by one or more counties. You indicated that the Commission has proposed legislation to authorize regional jails under the premise that article 5-G of the General Municipal Law requires "specific statutory provisions for each particular service or facility to be jointly provided or maintained". You have found that the legislative history underlying article 5-G indicates the need for specific implementing legislation.
Article 5-G broadly empowers municipal corporations and districts to enter into agreements "for the performance among themselves or one for the other of their respective functions, powers and duties on a cooperative or contract basis or for the provision of a joint service or a joint water, sewage or drainage project". General Municipal Law §119-o(1). "Joint service" is defined as the joint provision of any municipal service, activity, etc. or joint exercise of any function or power which each municipality possesses. Id., § 119-n(c).
Article 5-G was added by chapter 102 of the Laws of 1960, a proposal sponsored by the former New York State Office for Local Government. Legislative Bill Jacket, L 1960, ch 102 -Letter from Milton Alpert, Counsel, Office for Local Government to Hon. Robert MacCrate, Counsel to the Governor. The bill was intended to provide "immediate authorization" to municipalities to enter cooperative agreements and implemented provisions of the Constitution authorizing the Legislature to empower municipalities to provide services cooperatively, jointly or by contract. Ibid. "[U]nder the bill municipalities and districts are given broad power to enter into agreements among themselves" for performance of their respective functions, powers and duties. The bill was intended to provide "an alternative procedure which may be utilized in place of any detailed statute authorizing cooperation among municipalities". Ibid.
We note that the letter from the former Office for Local Government stated that
 "It is anticipated that more detailed legislation will be desirable in the future. Accordingly, this bill should be considered as interim legislation pending the development and subsequent enactment of more detailed provisions of law."
We believe it is clear, however, that in the context of the entire letter this statement anticipated the need for technical corrections in the initial proposal. In fact, technical amendments were subsequently enacted. See, for example, L 1961, ch 681; L 1970, ch 331.
The sponsor made it clear that the proposal was not intended to displace any specific statute authorizing cooperation but instead "merely provides a general alternative procedure under which arrangements may be made for cooperative provision of municipal services". Ibid. The intention was to grant home rule power to municipalities and districts to determine the details of the arrangements into which they might enter. Ibid.
The State Comptroller gave qualified approval to the bill, noting some technical defects requiring correction. Legislative Bill Jacket, L 1960, ch 102 — February 23, 1960 memorandum from Arthur Levitt, State Comptroller, to Hon. Robert MacCrate, Counsel to the Governor. While stating a preference for specific legislation authorizing cooperation in particular fields, the Comptroller clearly indicated that Article 5-G would serve as an immediate authorization for municipal cooperation.
 "All observers are agreed that interlocal cooperation in the State of New York should be provided for in the simplest terms, under the broader powers and at the earliest date consistent with public policy. The present act reflects an earnest effort to accomplish these purposes.
 "There are apparent defects in the act. More will appear as experience is gained, for by its very nature a pioneer act such as this time should not be with these possible defects but with getting interlocal cooperation into action.
* * *
 "In the interest of furthering interlocal cooperation in the State of New York at the earliest possible date, we therefore recommend approval of the bill but urge that immediate attention be given to those areas in which we have indicated amendment would be in order."
As noted previously, technical amendments did in fact follow.
The legislative memorandum in support of the bill notes that in 1959 five specific bills were proposed authorizing the provision of particular services on a joint basis. Legislative Bill Jacket, L 1960, ch 102 — Memorandum Supporting Senate 1123. These bills were vetoed "because of technical defects or because of their piecemeal approach".Ibid. The 1960 legislation was intended to accomplish all of the specific purposes of the vetoed legislation and to "permit the joint solution of a myriad of other municipal problems". Ibid.
Subsequent amendments to article 5-G provided even broader authority by enlarging the definition of a "joint service" (Bill Jacket, L 1963, ch 15); by adding fire districts to the list of entities that can cooperate (Bill Jacket, L 1964, ch 355); by eliminating the need for a three-quarters vote of the governing bodies of municipalities or districts seeking to enter cooperative agreements (L 1971, ch 62); in authorizing the performance of powers and functions on a cooperative or contract basis in addition to the then existing authorization to exercise powers and functions on a joint basis (L 1972, ch 407), and in adding public housing authorities to the list of entities that can cooperate (Bill Jacket, L 1974, ch 236). Also enacted was some clarifying legislation. Bill Jacket, L 1961, ch 681; L 1970, ch 331.
In our view, the broad language of article 5-G, authorizing the joint or cooperative provision of any functions, powers and duties which each municipality or district possesses, is sufficient authorization for the establishment of regional jails. Further, the legislative history indicates a clear purpose to authorize municipal cooperation generally. There is no indication, either in the provisions of the statute or in the legislative history, of a need for subsequent implementing legislation for specific purposes. On the contrary, there is an indication that this approach was abandoned with the veto of proposed legislation in 1959 and the enactment of chapter 102 of the Laws of 1960, establishing article 5-G of the General Municipal Law.
Article 5-G provides for implementation of municipal cooperation by suggesting provisions that may be included in cooperation agreements. General Municipal Law § 119-o(2)(a). In opinions of the Attorney General, we have relied upon the broad authorization of article 5-G in concluding that various services, powers and duties may be undertaken jointly or cooperatively. 1989 Op Atty Gen (Inf) 96; 1988 Op Atty Gen (Inf) 74, 86; 1984 Op Atty Gen (Inf) 48; 1983 Op Atty Gen (Inf) 78, 138.
We conclude that article 5-G of the General Municipal Law authorizes the establishment of regional jails through municipal cooperation agreements.